**Edward Johnson, OSB #965737**
ejohnson@oregonlawcenter.org
OREGON LAW CENTER
522 SW Fifth Avenue, Suite 812
Portland, OR 97204
Phone: (503) 473-8310
Fax: (503) 295-0676

**Gideon Anders, Calif. Bar # 86872**
ganders@nhlp.org
NATIONAL HOUSING LAW PROJECT
703 Market Street, Suite 2000
San Francisco, CA 94103
Phone: (415) 546-7000
Fax:  (415) 546-7007

**Andrew W. Hartnett, OSB # 091120**
drew.hartnett@lasoreogon.org
LEGAL AID SERVICES OF OREGON
832 Klamath Ave
Klamath Falls, OR, 97601
Phone:  (541) 273-8872

Of Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| MARIA BROWN,<br>OSCAR HERNANDEZ, and<br>BRITANI JOHNSTON, | Case No. 1:14-cv-1739-PA |
| Plaintiffs, | |
| v. | PLAINTIFFS' REPLY TO THEIR<br>MOTION FOR A PRELIMINARY<br>INJUNCTION |
| THOMAS VILSACK, Secretary of the<br>Department of Agriculture;<br>DOUGLAS O'BRIEN, Acting<br>Undersecretary for Rural Development;<br>TONY HERNANDEZ, Administrator<br>Rural Housing Service; and<br>VICKI L. WALKER, Oregon Rural<br>Development State Director, | |
| Defendants. | |

## I.      INTRODUCTION

1 – REPLY BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION

Plaintiffs have shown that RD has unreasonably delayed the processing of the Fenner prepayment request for nearly five months thereby making the Plaintiffs ineligible for RD vouchers, making it very likely that Merrill Apartments will not be preserved, and ensuring that Plaintiffs will be displaced, thereby threatening them with homelessness. RD's actions have clearly violated ELIHPA, which requires RD to preserve affordable housing and prevent resident displacement, violated the statutory provisions against operating its program in a manner that will cause resident displacement, and violated the Plaintiffs' right to secure vouchers that would assist them to stay in their homes.

RD's response to Plaintiffs' memorandum does not seriously contest or address any of the Plaintiffs' claims that RD's actions have unreasonably delayed the processing of the Fenner prepayment request. Instead, it contends that Fenner should have applied to prepay its loan earlier, that Fenner has delayed the processing of its prepayment request by taking the full time that RD regulations allow it to take to reject an incentive offer, and claiming that the 180-day regulatory notice period cannot be used as a standard for determining whether RD's actions constitute unreasonable delay.  RD's arguments do not withstand scrutiny given the law and facts of this case.  Moreover, its claims that Plaintiffs have not shown a likelihood of success on the merits, that the balance of hardships does not tip in their favor, and that their requested injunction is not in the public interest are simply wrong.

## II.     ARGUMENT

2 – REPLY BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION

A.    **PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS**

1.    **The 180-day period is a valid standard by which to judge whether RD has unreasonably delayed its processing of the Fenner Prepayment request.**

ELIPHA unambiguously requires RD to process a borrower's prepayment request, approve the sale, financing and subsidy necessary to preserve developments the prepayment of which would adversely affect minority housing opportunities. 42 U.S.C. §§ 1472(c)(5)(C), and (D). ELIHPA mandates these actions in order to preserve Section 515 housing and protect its residents from displacement and this Court has ample authority to force the agency to comply with this statutory mandate. 5 U.S.C. § 706(1).

Plaintiffs' opening brief clearly states that there is no *per se* rule of when an agency delay is unreasonable. Dkt. # 36 p. 25. They have, however, pointed to the 180-day regulatory notice period as a standard for this court to apply as a basis for determining whether RD has unreasonably delayed the processing of the Fenner prepayment request. Dkt. # 36 pp. 25-26. This standard can and should have been met in a case where KHA has been operating as an agent of Fenner in operating Merrill.  RD has known for a long time that Fenner intends to sell Merrill to KHA, a purchaser entitled to priority consideration when it makes a purchase offer. *See*, Dkt. # 13, ¶¶ 13-26 and 42 U.S.C. § 1472(c)(5)(B)(iii). Yet throughout this process RD has discouraged the filing of the prepayment request, stalled its processing, and provided wrong and misleading information to KHA and Fenner. *Id.*

Fenner submitted its prepayment request on August 19, 2014, a full 352 days before its loan is scheduled to mature. Plaintiffs have previously shown that RD's actions, which the Defendants do not contest or explain, in reviewing the completeness of the Fenner prepayment request, in erroneously requiring Ms. Fenner to submit a personal financial statement, took over

3 – REPLY BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION

2 months when they should have taken days. Dkt. # 36 p. 18-19. It took RD another 83 days to determine whether the prepayment would have an adverse impact on minority housing opportunities, a process that should also have taken days. *Id.* p. 19.

Under RD regulations, one or more appraisals must be secured to establish the sales price of the development. 7 C.F.R. § 3560.659(a). However, nothing in the regulations precludes an owner from beginning to advertise the development for sale when the appraisal process has been initiated and to even accept an offer to purchase the development before the appraisal process is completed. Anderson Dec, ¶ 13, 7 C.F.R. § 3560.659(b)(2). Ms. Mitchell's contrary declaration is simply wrong. The actual sales price for the development does not need to be advertised when the development is offered for sale because that price can be provided to interested parties after it is established by a statutory appraisal process. See, 7 C.F.R. § 3560(b)(3). Moreover, financial feasibility of operating the development is also not required because RD is required to finance the development and to subsidize its residents so that they do not pay more than 30 percent of income for shelter. 42 U.S.C. §§ 1472(c)(5)(C) and (D).

Given that KHA, as a local purchaser, is entitled to priority consideration, *id.* § 1472(c)(5)(B)(iii) and 7 C.F.R. § 3560.359(f), and that it is successfully operating four Section 515 developments in Klamath County, Dkt. # 13, ¶12, the advertisement and acceptance of a sales offer could and should be condensed to a matter of days. All that then remains is for KHA to submit an application to RD seeking approval for the purchase of Merrill and seeking financing and subsidies to continue to operate the development that it was already managing. These actions could and should have been completed in less than 180-days had RD not

4 – REPLY BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION

unreasonable delayed the processing of the Fenner prepayment request.[1]  There can be no

question that all of these actions could and should have been completed in less than 352 days

which RD has had to fully process the Fenner prepayment request.

RD's response brief never acknowledges, let alone addresses, why it has taken it 157

days to complete a process that should have taken it 60, or fewer, days. It simply ignores the

issue and claims that it is now diligently processing the prepayment request. It has previously

made the same representation in its response to Plaintiffs' first motion for a preliminary

injunction. Dkt. # 36, p.14. Plaintiffs took the Defendants at their word and withdrew their first

preliminary injunction motion when RD conceded that the Merrill loan will not mature until

August 5, 2015. Dkt. # 36, p. 14.

Instead of responding to Plaintiffs' claims, RD blames Fenner for not having filed an

application to prepay the loan when RD first notified it of the requirement in 2012, when RD

erroneously thought the Merrill loan would mature in November of 2014. Dkt. # 42 p. 12. It also

blames Fenner for taking the fully authorized 30-days to respond to the RD incentive offer and

for purportedly not acting with sufficient haste in securing the Merrill appraisal. *Id.* p. 15.

Finally, it blames KHA for not having previously submitted an application for the transfer of

Merrill. Dkt. # 42, p. 28.

All of the RD blame is misplaced. Fenner did not have to apply to prepay the Merrill loan

when the RD November 2012 letter advised it that it must apply no later than 180 days before the

loan matures. Not being familiar with the RD prepayment process and not being alerted to the

---

[1]    Ms. Gleason's most recent letter to Fenner stating that the advertisement of Mitchell is
premature, Otero Declaration, Ex. B, ¶ 12, is yet another example of how RD is unreasonably
delaying the processing of the Fenner prepayment request.  Ironically, in their brief, Defendants
criticize Fenner and KHA for not having advertised Merrill for sale or for not having entered into
a sales agreement.

5 – REPLY BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION

fact that it may take more than 180-days to complete, Fenner had no reason to apply to prepay in 2012. Moreover, it actually applied to prepay 352 days before its loan matures. There is simply no basis for it to have concluded that prepayment would take more than 180 days or that it could not be concluded in 352 days. Other than the 180-day standard, RD has never advised anyone as to how many days it needs to fully process a prepayment request. There simply is no basis upon which third parties can determine how much time is needed. In the absence of any other guidance RD must be held to the 180-day standard that it has published.

RD can also not blame Fenner for taking the full number of days its regulations authorize it to take to reject the general incentive offer. RD knew that Fenner was going to reject the offer by virtue of its having sent a 'general incentive' offer instead of a specific incentive offer. RD could have proceeded to begin its determination of whether the prepayment will have an adverse impact on minority housing opportunities before the 30 days expired particularly when it received the Plaintiffs' comments that the prepayment will have such an adverse impact. RD does not explain or justify why it did not take that action earlier.[2]

RD also blames KHA for not having applied to transfer Merrill earlier. Dkt. # 42, p. 28. However, the only way it could have done so is under the voluntary MPR process, which Ms. Gleason admits is competitive and takes several years to complete. Dkt. # 43-10. See Anderson Declaration, ¶ 10.

---

[2]     Defendants also blame Fenner for purportedly not initiating its appraisal of Merrill on a timely basis. In fact, RD regulations make it clear that "If the borrower's assessment of the Agency's appraised market value indicates that no further appraisal is needed, the borrower may agree to accept the Agency's appraisal." 7 C.F.R. § 3560.659(a). *See* Anderson Dec. ¶ 12. RD apparently ignores this provision when it insists that borrowers undertake a separate appraisal.

6 – REPLY BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION

Thus, contrary to the Defendant's argument, the critical issues are whether RD unreasonably delayed the processing of the Fenner prepayment request and whether or not the 180-day standard is a reasonable standard to be applied in this case.[3] RD clearly has a statutory duty to process the Fenner prepayment request and RD, which has had full knowledge of the impending maturity of the Merrill loan, cannot delay its processing to ensure that the loan matures before Merrill is preserved and without its residents becoming eligible for RD vouchers.

### 2.    Plaintiffs are entitled to the Relief that they seek.

The Plaintiffs are requesting this Court to delay the maturity of the Fenner loan to enable the prepayment process, which has been unreasonably delayed, to take its course. They are not asking the Court to get involved in the day-to-day process of forcing Fenner or KHA to take particular actions that they clearly intend to take.  Fenner and KHA have come to an agreement to purchase and sell Merrill. Otero Declaration, Ex. B, ¶ 6. All they need is time to complete the process.

### 3.    Plaintiffs are entitled to a mandatory injunction.

The Plaintiffs request for injunctive relief is predicated on their first cause of action which asserts that RD has unreasonably delayed the processing of the Fenner prepayment request and not, as the defendants claim, on their second through fifth causes of action. Dkt. # 42, p. 28. The Defendants' first two arguments with respect to Plaintiffs' right to relief, thus, fall by the wayside.

---

[3]     RD's reliance on *Norton v. S. Utah Wilderness Alliance*, (SUWA) 542 U.S. 55 (2004) is misplaced.  In SUWA the Supreme Court did not find any mandatory duty on the government to act.  It, therefore, refused to apply § 706(1) of the APA.  In this case, ELIHPA has established at least four mandatory acts that RD must perform.  Therefore, this Court can determine whether the agency's delay in undertaking those actions is unreasonable.

7 – REPLY BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION

Defendants' third argument that RD's discouraging actions toward Fenner and KHA are irrelevant is simply disingenuous. First, it ignores the fact that KHA has been working closely with Fenner for over a year to try to preserve Merrill.  RD's actions in advising KHA and Fenner that nothing could be done to preserve Merrill, Otero Dec, ¶12; Dkt. # 13, ¶¶ 14-15,17, discouraged both KHA and Fenner from proceeding to file the request to prepay the loan and to transfer Merrill to KHA. *Id.* Second, on several occasions Defendants argue that KHA never applied to have Merrill transferred and that its failure to do so shifts the blame from RD to KHA and Fenner. *See e.g*. Dkt. # 42 , p. 28. Defendants cannot have it both ways.

Defendants' claim that RD explained its rationale for failing to accept the Fenner prepayment request is also misleading. Dkt. # 42, p. 24. Plaintiffs' contend that RD's actions took longer than set out in its handbooks and were not justified by any of the RD regulations. Dkt. # 36, p. 18. Defendants do not respond or justify either argument.

Plaintiffs' argument with respect to Ms. Gleason's e-mail to Rose Ojeda, Dkt. # 36 at pp. 20-21 is yet another recent example of how RD, through its communication with KHA and its consultant, has continuously acted to discourage KHA and Fenner from acting to preserve Merrill. Contrary to the Defendant's assertion, Plaintiffs have not misrepresented the e-mail exchange between Ms. Ojeda and Ms. Gleason. Ms. Ojeda's January 30th e-mail to Ms. Gleason makes no mention of the MPR process. Dkt 43, Ex. 10. It simply asks if Fenner accepts the KHA offer to purchase Merrill "what RD resources will be available to purchase the property…" *Id.* Ms Gleason's response was that the sale would have to be considered a transfer and would have to comply with specified regulatory provisions, which incidentally do not conform to ELIHPA's forced sale requirement. "As for funding opportunities," Ms Gleason replied, "our FY 2014 MPR NOFA has closed and we just recently selected applications for further financing. **At this time,**

8 – REPLY BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION

**there are no other available Agency funds.**" *Id.* (emphasis added). This is a clear

misrepresentation of the facts and suggests to KHA that efforts to preserve Merrill through an

RD financed sale would be futile. Ms. Ojeda only mentions the MPR process in her subsequent

February 3rd e-mail to Ms. Gleason in response to her statement that MPR funding is the only

potential source of funding. Dkt 43, Ex. 11. Clearly, the January 30th e-mail is consistent with

RD's continuing efforts to delay and discourage the preservation of Merrill.

       In a very similar situation last year, nonprofit organizations in Minnesota were advised

that agency funding was not available to finance the transfer of two developments to nonprofit or

public entities.  As a result, no offers were made to purchase two developments whose owners

applied to prepay their loans.  When the issue was raised with the RD national office, Tony

Hernandez, the RD Housing Administrator advised the Minnesota Housing Preservation Project

that RD funds were available for such transfers by virtue of the fact that RD has a special set-

aside for such transactions.  Dec. of Timothy Thompson, Ex. A.  To remedy the situation, Mr.

Hernandez offered to finance the purchase of the developments even after the 180-day

advertisement time had elapsed.  *Id.*

## B.    INJUNCTIVE RELIEF WILL AVOID IRREPARABLE HARM

       The Defendants mischaracterize the relief that Plaintiffs are seeking in this case. Dkt.

# 42, p. 26. Plaintiffs are not trying to prevent the maturation of the Merrill loan. They are

seeking to prevent displacement from their homes and an inability to even secure RD vouchers

that would allow them to continue to receive subsidies if Merrill is not preserved.  In short, they

are seeking enforcement of ELIHPA, which was passed for the explicit purpose of preserving

9 – REPLY BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION

affordable housing and preventing the displacement of residents.[4]  While the maturation of the

Fenner loan is clearly an impending threat, the only reason that it is so is because RD has

unreasonably delayed the processing of the Fenner prepayment request.

Fenner filed its prepayment request 352 days before the Merrill loan matures. RD has

discouraged the filing and delayed the processing of the Fenner request to the point that the

Plaintiffs have been deprived of their eligibility for vouchers and will be deprived of the

opportunity to remain in their homes as ELIHPA was intended to accomplish.  Plaintiffs are not

seeking to secure relief to which they are not entitled because of the maturation of the Merrill

loan. They are seeking relief that they are entitled to receive, and should have received, under

ELIHPA had the agency diligently processed the Fenner prepayment request. This is no different

than the relief that was accorded in *Harriot v. Ashcroft*, 277 F.Supp.2d 538 (D. Pa. 2003), where

the court required the INS to process the plaintiff's citizenship request as if he were under 18

when the agency had unreasonably delayed his citizenship application until after he was 18 and

became subject to additional requirements.

The Defendants' contention that there is no proof that they will not be able to continue to

live at Merrill after the loan matures and that they will be protected by Oregon state law, Dkt. #

44, p. 27, is frankly offensive. The budget under which Merrill is currently operating, which has

been approved by the Oregon RD Office, shows that it currently costs $73,573 to operate the

development for a single year without having to make any mortgage payments. Otero

Declaration, ¶ 5. This translates into a monthly rent of $557.00 for each of the eleven revenue

producing units at Merrill. None of the Plaintiffs are paying anywhere near that amount for rent

---

[4]    It is ironic that RD, which is charged with the statutory goal of ensuring that every
American family has decent safe and sanitary housing, 42 U.S.C. § 1441, is abdicating that very
goal in this case.  *See Turner v. Vilsack*, 2013 WL 6074114, *7 (D.Or. Nov. 18, 2013).

and they would not be able to pay that rent once the RD Rental Assistance subsidy is terminated. *Id.*

Moreover, Oregon law will not protect Plaintiffs against eviction for nonpayment of rent beyond the right to a 72 hour written notice. ORS 90.394(2)(a). While Fenner may be able to operate Merrill at a slightly lower cost, it is simply unreasonable to expect that it will continue to operate Merrill at a loss by offering to rent its units at the current subsidized rents.

Plaintiffs do not ask this Court to order a particular outcome. They are asking that RD be required to process the prepayment request expeditiously and that sufficient time be given to allow that process to be completed. Plaintiffs expect that the extension of time to fully process the Fenner prepayment request will result in the sale of the development to KHA. KHA has expressed an interest in purchasing Merrill and the KHA Board, a public body, has approved the purchase of the development at its meeting on March 4, 2015. Otero Declaration, ¶ 7. Under RD regulations, KHA is a priority purchaser whose offer must be accepted before any other offer is accepted. There is no other nonprofit or public body operating housing in Klamath County that could compete with a KHA offer. *Id.* ¶ 8. KHA has hired consultants to help it process the RD transfer and subsidy application and secure third party financing in the event that RD financing is not available. Dkt. 37, ¶¶ 4, 6. Fenner and KHA have agreed to a purchase and sale agreement for the sale of Merrill and have agreed that the sales price will be determined by the ongoing statutory two-appraisal process. Otero Declaration, ¶ 6 and Ex. B. Congress has appropriated funds for the financing of Section 515 developments and for Rental Assistance for this fiscal year and there is no indication that RD will run short of funds to finance the sale and subsidies to maintain Merrill as an affordable Section 515 development. Anderson Dec., ¶ ¶ 8-9. Given all of

11 – REPLY BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION

these actions, it is not unreasonable for the Plaintiffs to expect that the result of this Court's order

will lead to the transfer of Merrill to KHA.

### C.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM

Plaintiffs' memorandum in support of their motion for a preliminary injunction clearly

delineates the harm that the Plaintiffs will face in the event that Merrill is not preserved as a

subsidized development. Dkt. # 36, pp. 29-31. Specifically, they point out that because of RD's

processing delays, they have become ineligible for RD vouchers that protect tenants in prepaid

developments from displacement and loss of deep subsidies. However, in this case they can no

longer qualify for vouchers because it is impossible for Fenner to prepay the Merrill loan before

it matures on July 29, 2015. As a result, they will face displacement, loss of subsidies and are

likely to be forced to live in housing that is not decent, safe, and sanitary, move in with relatives,

or become homeless. Dec. of Maria Brown, Dkt. # 10 ¶¶ 7-8; Dec. of Britani Johnston, Dkt.

# 12, ¶¶ 7-8; and Dec. of Oscar Hernandez, Dkt. # 11, ¶¶ 7-8. In the case of Mr. Hernandez, he is

also likely to lose the right to have his step-children stay with him. *Id.* ¶ 8.

The Merrill loan can no longer be prepaid because Fenner has a statutory and regulatory

obligation to continue to advertise the sale of Merrill for the balance of the 180-day advertising

period if the advertising is suspended because Fenner has entered into a sales agreement with

KHA. 7 C.F.R. § 3560.659 (b)(1). Even under the best of circumstances, assuming that Fenner

could prepay the loan as late as July 28, 2015, it would have been required to begin the

advertising on January 29, 2015, a mere two days after it received the RD letter stating that its

prepayment will have an adverse impact on minority housing opportunities. Since the

advertisement was not started until March 4, Otero Dec. ¶ 10, the balance of the 180-day period

will not expire until after July 29, 2015 and the Plaintiffs will never become eligible for RD

12 – REPLY BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION

vouchers. As a result, the only way to protect the Plaintiffs from these consequences is to ensure that the sale of Merrill to KHA is consummated or the due date of the final mortgage payment is postponed for some date after August 31, 2015, when the current 180 day period expires.

If RD had not unreasonably delayed its initial ministerial acts in reviewing the Fenner prepayment request, Fenner could have commenced the advertising of the sale of Merrill as early as January 1, 2015,[5] thereby causing the 180 day period to expire in late June of 2015, giving Merrill the opportunity to prepay the loan before July 29, 2015 and, thereby, making the residents eligible for RD vouchers.

### D.    THE BALANCE OF HARDSHIPS FAVORS THE PLAINTIFFS

The entire 515 loan program will not be jeopardized, as the Defendants claim, by the relief that the Plaintiffs seek in this case. Dkt. # 42, p. 29-30.  Residents, such as the plaintiffs, will not be able to delay the final maturity of Section 515 loans unless they are able to show that RD has unreasonably or illegally delayed the complete processing of a prepayment request. The threshold for this relief is high and other residents will not be able to readily secure that relief. Indeed, the relief that the Plaintiffs seek at this point is not significantly different from that which the Plaintiffs secured in *Lifgren v. Yeutter*, 767 F.Supp. 1473 (D. Minn. 1991) and in *Goldammer v. Veneman*, 2007 WL 1748665 (D. Or. 2007) *on remand* from 465 F.3d 1031 (9th Cir. 2006), where owners who prepaid their RD loans were forced to return the developments into the Section 515 program. *See also, Charleston Housing Authority v.U.S.D.A.,* 419 F.3d 729 (8th

---

[5]       This assumes that RD would have acted promptly with respect to its ministerial decisions, taken 30 days to determine whether there was an adverse impact on minority housing opportunities, and then taken another 30 days to secure an appraisal.  This even includes a 30 day period for Fenner to have considered and rejected the RD's general incentive offer.

13 – REPLY BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION

Cir. 2005). None of these cases have stopped the prepayment of RD loans.  It has only resulted in RD following ELIHPA's mandates more carefully.

Fenner is also not injured by the relief that Plaintiffs are seeking.  Under RD regulations, KHA, by virtue of its being a local housing authority, is a priority purchaser whose bid must be accepted by Fenner before accepting any other bids. Moreover, Fenner is intent on selling Merrill to KHA and it has expressed its intent in a prior declaration and by entering into a sales agreement with KHA to transfer Merrill at the price established by the statutory two-appraisal process. Otero Decl., Ex. B and ¶ 6. The fact that the Fenner mortgage is extended for any period of time does not harm Fenner because additional interest charges, if any, would be minimal given that the Merrill mortgage balance is currently less than $500. Moreover, it would facilitate the sale of Merrill to KHA something that Fenner has agreed to do.[6]

Plaintiffs are not asking this Court to rewrite Fenner's mortgage terms with RD.[7]  They are simply asking this Court to enjoin RD from accepting any payments from Fenner until the sale from Fenner to KHA is consummated or it appears that it cannot be consummated. RD is

---

[6]     RD's speculative contention that Fenner may not accept KHA's offer has been set aside by the fact that Fenner and KHA have reached an agreement for sale.  Moreover, Fenner cannot refuse KHA's offer even if someone offers it a better deal.  Under RD regulations the price for the sale is set by the appraisal process.  This is intended to protect the government against having to make larger loans and pay out a greater subsidy than the property is appraised at.  Moreover, RD regulations also give KHA priority in the making and acceptance of bids. Thus, there is no way that Fenner can avoid selling Merrill to KHA.

[7]     RD's reliance on *Zepda v. United States Immigration Service*, 753 F.2d 719 (9th Cir. 1985), is misplaced. The decision dealt with whether relief could be secured for a class of persons when no class had been certified by the district court.  To secure relief for the class they had to be before the court.  Here Fenner need not be before the Court because its interests are not affected in any way that will harm them.

14 – REPLY BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION

already doing that by having agreed not to accept any mortgage payments from Fenner over the next four months. Dkt. # 18  ¶ 8.

Even if Fenner's mortgage terms were to be altered, it is no different from what Congress has already done by forcing owners to go through the current ELIHPA prepayment process, which is contrary to the explicit prepayment and refinancing provisions that all RD mortgages provided for prior to 1979. *See* Dkt. # 13, Ex. A, p. 9103, ¶ 15.

 Moreover, if RD is so concerned about the sanctity of its contract and mortgage with Fenner, the agency can contact Fenner and work out an extension with them without forcing them to join this litigation. It has ample authority to do so.[8]

As Plaintiffs have previously argued, they do not intend this Court's to force Fenner to do anything. They do not believe it is necessary because Fenner has been cooperating with KHA throughout this prepayment process. Plaintiffs have also made it clear that if the sale from Fenner to KHA cannot be completed for any reason outside RD's control, they can ask this Court to modify or withdraw the injunction.  Dkt. # 27, p. 20.  In fact, Plaintiffs will join RD in asking the Court to do so.

In short, the injuries that the Plaintiffs face—displacement from their homes and possible homelessness—far outweigh the speculative injuries that the Defendants claim they will suffer.

### E.    PLAINTIFFS' REQUEST  FOR RELIEF IS IN THE PUBLIC INTEREST

ELIHPA, the Housing Voucher program, and the anti-displacement provisions in 42 U.S.C. § 1471 (g) were all enacted to protect residents from displacement and to preserve scarce affordable rural housing. The relief that Plaintiffs seek is precisely what is set out in those

---

[8] In fact there is no need to alter the Merrill mortgage. RD has already reserved its right to "extend and defer the maturity of and renew and reamortize the debt evidenced by the note…" Merrill Real Estate Mortgage for Oregon, Dkt. # 13, Ex. A, p. 9103, ¶ 14.

15 – REPLY BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION

statutes. Most specifically, ELIHPA, the mandate for which the Defendants have been unwilling to even acknowledge, requires RD to force an owner to sell its Section 515 development to a nonprofit or public entity when its prepayment has an adverse impact on minority housing opportunities, finance the sale by transferring the outstanding mortgage and financing the balance, and extending subsidy to the new owner to ensure that residents do not pay more than 30 percent of their income for shelter. ELIHPA could not compel a more discrete set of actions that RD must undertake. These actions are legally required and the Plaintiffs intend to make that clear by seeking declaratory relief to that effect.

While ELIHPA does not explicitly authorize the extension of a loan past its maturity date, it also does not authorize the agency responsible for its implementation to unduly delay the processing of a timely filed prepayment request until the persons intended to be protected by ELIHPA lose that protection. Section 706(1) of the APA authorizes courts to "compel agency action unlawfully withheld or unreasonable delayed." This is precisely what Plaintiffs are asking this court to do. Compelling an agency to take action that it is required to take is clearly within the public interest.

Finally, the Defendants' claim that continuing Rental Assistance payments for the Merrill residents is against the public interest because it will take Rental Assistance away from other tenants is without any merit. The declaration upon which the statement is made is conclusory and without any support. RD assigns Rental Assistance to developments based on annual contracts that enumerate the number of households that get assistance under the program. *See* Form RD 3560-27, Section 1 (available at http://forms.sc.egov.usda.gov/efcommon/ eFileServices/eForms/RD3560-27.PDF. RD cannot reduce that number unless the assistance remains unused for more than 6 months. 7 C.F.R. § 3560.259 (2014). Thus, no household who

16 – REPLY BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION

has received Rental Assistance from RD has ever been denied assistance because the agency lacked Rental Assistance funding or funding from terminating projects have not been recovered. Thus, continuing Rental Assistance for the Merrill residents is not a hardship on anyone. Moreover, Congress has made the determination that RD must extend Rental Assistance or debt forgiveness to residents whose developments are preserved.  It has taken the decision of whether to extend this assistance to these residents out of the agency's hands. Thus, no one will be harmed by forcing RD to preserve Merrill and continue to subsidize its residents.

**III.    CONCLUSION**

Plaintiffs, all of whom are extremely low-income persons facing extreme hardship due to RD's failure to diligently meet its statutory obligation to protect them from displacement, respectfully request this Court to exercise its equitable powers and enjoin the Defendants from continuing to unreasonable defer actions that they are required to undertake and ensure that the homes in which they live are preserved.

Respectfully submitted this 14th day of March 2015.

By:  /s  Gideon Anders_____
Gideon Anders